PER CURIAM
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Bruce C. Ashley, II, an attorney licensed to practice law in Louisiana.
UNDERLYING FACTS
The following facts are not in dispute, having been stipulated to by the parties:
On February 19, 2015, respondent was involved in an automobile accident, totaling his vehicle. On February 24, 2015, he was admitted to East Jefferson General Hospital ("EJGH") for severe abdominal pain on his left side, dehydration, and alcohol abuse. Following a two-day stay, he was discharged from EJGH.
On April 27, 2015, respondent was admitted to Beacon Behavioral Hospital ("Beacon") for threat of suicide, pursuant to a coroner's commitment. He was discharged from Beacon on April 29, 2015.
On May 7, 2015, as a result of being highly intoxicated, respondent suffered a serious fall. He was involved in a single car accident the same day, which totaled his wife's car. The following day, he was admitted to the ICU at EJGH, where he was intubated for eleven days and diagnosed with three broken ribs, a punctured and collapsed lung, and pneumonia. He was discharged from EJGH on May 22, 2015.
On May 29, 2015, respondent was admitted to a ninety-day inpatient treatment program for alcohol abuse at Pine Grove Behavioral Health and Addiction Services. He was discharged from Pine Grove on August 26, 2015. On September 17, 2015, respondent entered into a recovery agreement with the Judges and Lawyers Assistance Program ("JLAP"). The following month, respondent voluntarily appeared before the ODC for a sworn statement, at which time he disclosed that he suffered from chemical dependency and severe depression.
Count I
The following facts are not in dispute, having been stipulated to by the parties: Clothilda Joseph retained respondent to represent her brother in a criminal matter. Respondent was paid at least $11,935 for his services. Respondent then failed to appear in court for seven out of thirteen court dates. He also failed to advise his *549 client that he had relocated his practice. After receiving notice of Ms. Joseph's disciplinary complaint on July 7, 2015, respondent requested an extension of time to submit his response. On October 21, 2016, respondent submitted his written substantive response to the complaint.
The ODC alleged that respondent's conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 8.1(c) (failure to cooperate with the ODC in its investigation), and 8.4(a) (violation of the Rules of Professional Conduct).
Count II
The following facts are not in dispute, having been stipulated to by the parties:
In June 2014, respondent was retained to represent Jeremiah Washington in a criminal matter. Respondent charged $5,000 and was paid at least $3,400 for the representation. Thereafter, he failed to respond to or return telephone calls and correspondence from Mr. Washington or Mr. Washington's family members. On September 20, 2015, Judge Robin Pittman contacted the ODC to advise that respondent had missed several court dates in Mr. Washington's case. She contacted respondent by telephone in open court on at least two occasions about his absences. Mr. Washington, his father (Clifford Washington), and Judge Pittman filed disciplinary complaints against respondent. Although he was served with notices of each complaint, respondent failed to provide any written substantive response.
The ODC alleged that respondent's conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5 (fee arrangements), 8.1(c), and 8.4(a).
Count III
The following facts are not in dispute, having been stipulated to by the parties:
In December 2014, respondent was retained to represent John Spellman in a criminal matter. Respondent was paid $2,500 for the representation. After enrolling as counsel of record and making one court appearance, respondent was involved in an accident and never returned back to court. He failed to return any money and failed to provide a written substantive response to the disciplinary complaint filed by Mr. Spellman.
The ODC alleged that respondent's conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5, 8.1(c), and 8.4(a).
Count IV
The following facts are not in dispute, having been stipulated to by the parties:
In March 2015, Craig Ulmer retained respondent to represent his daughter in a traffic matter. A $2,500 check was sent to respondent and negotiated soon thereafter. Respondent then failed to appear in court due to illness and an attachment was issued for his client. The matter was continued and the case remained dormant, with no further effort from respondent. Attorney Jacque Touzet completed the representation of Ms. Ulmer.
On October 27, 2015, respondent addressed these allegations while appearing at the ODC for a sworn statement in a separate investigation. On December 9, 2015, the ODC received correspondence from respondent advising that he had provided an accounting and refunded $1,500 in unearned fees to Mr. Ulmer. Thereafter, the ODC received correspondence from Mr. Touzet stating that Mr. Ulmer had not received a refund from respondent.
The ODC alleged that respondent's conduct violated the following provisions of *550 the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5, 8.1(a) (a lawyer shall not knowingly make a false statement of material fact in connection with a disciplinary matter), 8.1(c), and 8.4(a).
DISCIPLINARY PROCEEDINGS
In August 2016, the ODC filed formal charges against respondent. In his answer, respondent noted his prior medical and substance abuse problems, as well as his subsequent treatment for those problems. Prior to a formal hearing, respondent and the ODC filed a joint stipulation of facts. In this document, respondent admitted to the facts as set forth above and admitted that he violated the Rules of Professional Conduct as charged, except he did not stipulate to a violation of Rule 1.5 in Count II, Rule 8.1(a) in Count IV, or Rule 8.4(a) in all counts. The matter then proceeded to a hearing in mitigation, which was conducted by the hearing committee on June 12, 2017.
Hearing Committee Report
After considering the evidence and testimony presented at the hearing, the hearing committee accepted the joint stipulations agreed to by the parties. The committee found the stipulated facts to be supported by the other evidence in the record. The committee also made additional factual findings as follows:
Respondent suffers from alcoholism, which is in remission. The pivotal factor resulting in the remission of respondent's alcoholism is his adherence to the recommendations of JLAP and the clinical experts treating him. At the time of the hearing, he was compliant with his current JLAP recovery agreement. While his compliance was less than perfect, he was compliant in essential areas of his agreement.[1] His alcoholism was arrested and remained in remission through the date of the hearing. To remain in remission, it is essential that he closely follow the requisites of a newly executed JLAP recovery agreement. Periodic reports should be provided to the ODC to assure his close adherence to these requisites.
Respondent's minor but notable compliance issues with the JLAP recovery agreement reveal overall organizational challenges. Clearly, he is a highly gifted practitioner with decades of experience representing criminal defendants. He has provided substantial and valuable services for free or at reduced rates to underserved and under-resourced persons in the context of an underfunded and under-resourced criminal justice system. Having gifted practitioners willing to offer the services that respondent has and can provide yields great benefits to the court, the legal profession, the justice system, and society as a whole. As he embarks upon his relatively young and new journey in sobriety, independent monitoring of administrative and organizational aspects of his practice would offer an important measure of protection to his clients and assurances to the court and legal system that he has made needed organizational adjustments.
Respondent has not made full restitution to those to whom restitution is owed. He accepted fee payments either from or on behalf of those identified in the formal charges but failed to fully perform services for each of the clients. He was proud to discuss his active and successful participation in a twelve-step program of recovery *551 from alcoholism; however, a principal pillar of any such program is making amends to persons harmed. Thus, it is recommended that respondent faithfully follow through with this critical recovery tenet and take steps to make amends to the clients from whom he accepted legal fees but failed to fully perform legal services.
Based on the stipulations of the parties, the documentary evidence, and the testimony at the hearing, the committee determined respondent violated the Rules of Professional Conduct as alleged in the formal charges.
The committee determined that respondent violated duties owed to clients, the public, and the legal system. He acted negligently and knowingly. His misconduct caused actual harm to several past clients and the harm has yet to be rectified. After considering the ABA's Standards for Imposing Lawyer Sanctions , the committee determined that the baseline sanction is suspension.
In aggravation, the committee found a pattern of misconduct, multiple offenses, and substantial experience in the practice of law (admitted 1974).[2] In mitigation, the committee found personal or emotional problems, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, mental disability or chemical dependency including alcoholism or drug abuse, and remorse.
After further considering this court's prior jurisprudence addressing similar misconduct, the committee recommended respondent be suspended from the practice of law for eighteen months, fully deferred, subject to the condition that he enter into a new JLAP contract for a period of five years, or as otherwise recommended by JLAP, and that he remain in compliance with its terms, with periodic reports to be provided to the ODC. The committee also recommended a practice monitor be appointed to monitor the administrative and organizational aspects of respondent's law practice for a period of one year of active practice. The committee further recommended that respondent make restitution to Clothilda Joseph, Jeremiah Washington, John Spellman, and Craig Ulmer, and that the maximum time frame for making full restitution run concurrently with respondent's new JLAP contract.
The ODC objected to the leniency of the sanction recommended by the committee.
Disciplinary Board Recommendation
After review, the disciplinary board determined that the hearing committee's findings of fact based on the joint stipulation of the parties are supported by the record, and that the additional findings of fact made by the committee are also supported by the record. The board found the committee correctly applied the Rules of Professional Conduct and the legal conclusions of the committee are supported by clear and convincing evidence with the exception of the committee's finding of a violation of Rule 8.1(a) in connection with Count IV. Respondent stipulated to all of the charged violations except violation of Rule 1.5 in Count II, violation of Rule 8.1(a) in Count IV, and violation of Rule 8.4(a) in all four counts. These stipulations as to rule violations must be given effect *552 unless they are withdrawn. In re: Torry , 10-0837 (La. 10/19/10), 48 So.3d 1038.
The written stipulations between the parties does not include a stipulation that respondent failed to return an unearned fee in violation of Rule 1.5, as charged in Count II. The committee did not expressly acknowledge that respondent had not stipulated to this charge and did not discuss the rule violation on this count. However, the board found that respondent violated the rule, as supported by his testimony at the hearing that while he performed significant work on Mr. Washington's case, he believed he owed some money to his client from the $3,400 which he was paid.
Respondent also did not stipulate to a violation of Rule 8.4(a), which was alleged in all four counts. The board agreed with the committee that this is a "derivative violation" which is supported by the multiple other rule violations.
Finally, respondent did not stipulate to a violation of Rule 8.1(a), which is charged in Count IV. Here again, the committee did not expressly acknowledge that respondent had not stipulated to this charge and did not discuss the rule violation on this count. Rule 8.1(a) provides that a lawyer shall not "knowingly make a false statement of material fact" in connection with a disciplinary matter. The committee's finding that respondent violated this rule is apparently based on respondent's representation to the ODC that he had reimbursed a portion of the fee paid to him by Mr. Ulmer. In connection with the investigation of the Ulmer matter, respondent sent an undated letter to the ODC enclosing various documents regarding his representation of Mr. Ulmer's daughter. This letter was received by the ODC on December 9, 2015. Included with the letter was an unsigned copy of a letter to Mr. Ulmer providing a listing of the work he had performed on the case and enclosing a $1,500 reimbursement check, representing a portion of the $2,500 paid by Mr. Ulmer. Several months later, the ODC was advised that Mr. Ulmer had never received the letter or the check.
At the hearing before the hearing committee, after the stipulations were introduced into evidence, disciplinary counsel advised that the hearing was a hearing in mitigation as far as the ODC was concerned. Respondent was questioned briefly about the letter to Mr. Ulmer referenced in the letter received by the ODC on December 9, 2015. He did not dispute that Mr. Ulmer did not receive the letter and check if Mr. Ulmer says he did not receive them. However, respondent affirmatively testified that he mailed the letter and the check to Mr. Ulmer on the same day that he mailed the letter to the ODC which was received on December 9, 2015. There is no evidence to dispute this testimony. It is also significant that respondent has cooperated, shown remorse, and stipulated to other rule violations. The board therefore found the evidence was insufficient to meet the clear and convincing burden of proving a violation of Rule 8.1(a).
The board determined that respondent violated duties owed to his clients, the public, and the legal system. He acted negligently and knowingly. His misconduct caused actual harm to several past clients, which has yet to be rectified. The board noted that during some of the time period in question, respondent was not working and facing mounting expenses due to medical treatment for his serious physical injuries and lengthy inpatient rehabilitation for his alcoholism. After considering the ABA's Standards for Imposing Lawyer Sanctions , the board determined that the applicable baseline sanction is suspension.
In aggravation, the board found a prior *553 disciplinary record,[3] a pattern of misconduct, multiple offenses, and substantial experience in the practice of law. In mitigation, the board found personal or emotional problems, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, mental disability or chemical dependency including alcoholism or drug abuse, and remorse.
After further considering this court's prior jurisprudence addressing similar misconduct, the board recommended respondent be suspended from the practice of law for eighteen months, fully deferred, subject to the following conditions:
1. Respondent shall enter into a new JLAP contract for a period of five years, or as otherwise recommended by JLAP, and shall remain in compliance with its terms, with periodic reports to be provided to the ODC.
2. Respondent shall provide a detailed accounting to each of the clients in all four counts and to any person who paid any part of respondent's fee on behalf of any of those clients; shall participate in the Louisiana State Bar Association's fee arbitration program with respect to all clients referenced in the four counts and any person who paid respondent's fee on behalf of any of those clients; and shall pay any restitution which is determined to be owed as a result of the arbitration procedure no later than the expiration of the term of respondent's recommended new JLAP contract.
3. A practice monitor shall be appointed to monitor the administrative and organizational aspects of respondent's law practice for a period of one year of active practice.
The board further recommended respondent be assessed with the costs and expenses of this proceeding.
Neither respondent nor the ODC filed an objection to the disciplinary board's recommendation.
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5 (B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks , 09-1212 (La. 10/2/09), 18 So.3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. See In re: Caulfield , 96-1401 (La. 11/25/96), 683 So.2d 714 ; In re: Pardue , 93-2865 (La. 3/11/94), 633 So.2d 150.
The record of this matter supports a finding that respondent neglected legal matters, failed to communicate with clients, failed to refund unearned fees, and failed to cooperate with the ODC in its investigations. This misconduct amounts to a violation of Rules 1.3, 1.4, 1.5, 8.1(c), and 8.4(a) of the Rules of Professional Conduct.
*554 Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent's actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass'n v. Reis , 513 So.2d 1173 (La. 1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass'n v. Whittington , 459 So.2d 520 (La. 1984).
Respondent violated duties owed to his clients, the public, the legal system, and the legal profession. His misconduct was at least grossly negligent, if not knowing, and caused actual harm to several past clients, which has yet to be rectified. The baseline sanction for this type of misconduct is suspension. The record supports the aggravating and mitigating factors found by the disciplinary board.
In instances in which an attorney is found to have committed ethical misconduct stemming from an alcohol or substance abuse problem, we have imposed fully deferred suspensions so long as the attorney has demonstrated that he or she has addressed the problem. See, e.g., In re: Finckbeiner , 16-0654 (La. 5/20/16), 192 So.3d 111 (fully deferred one year and one day suspension imposed upon an attorney who was twice arrested for DWI, where the attorney successfully completed a thirty-day inpatient treatment program and entered into a one-year diagnostic monitoring agreement with JLAP); In re: Tallon , 08-0179 (La. 2/22/08), 974 So.2d 1290 (fully deferred one year and one day suspension imposed upon an attorney who was convicted of two DWI's, but who had taken steps to address her alcoholism); In re: Labourdette , 07-1653 (La. 9/19/07), 964 So.2d 927 (fully deferred one year and one day suspension imposed upon an attorney convicted of possession of controlled substances, where the attorney entered into a JLAP contract and demonstrated he had been sober for a significant period of time).
The evidence supports a finding that respondent is affected by a chemical dependency and that the chemical dependency caused the misconduct. The evidence also reflects that he has sought treatment and has demonstrated a meaningful period of recovery. According to respondent, he has been sober for more than two years. He has also completed an inpatient treatment program at Pine Grove in August 2015. Furthermore, respondent has been subject to a JLAP agreement since September 2015, and the director of the program reports that he has no reason to believe that respondent is "using substances or is a risk." By all accounts, respondent's recovery has made a recurrence of his misconduct unlikely. The proposed sanction will encourage his commitment towards recovery, and at the same time protect the public by providing a mechanism to remove respondent from practice if he relapses into substance abuse in the future.
Based on this reasoning, as well as the absence of any objection by the ODC to the disciplinary board's report, we will adopt the board's recommendation and suspend respondent from the practice of law for eighteen months, fully deferred, subject to the conditions set forth in the board's report, as follows:
1. Respondent shall enter into a new JLAP contract for a period of five years, or as otherwise recommended by JLAP, and shall remain in compliance with its terms, with periodic reports to be provided to the ODC.
*555 2. Respondent shall provide a detailed accounting to each of the clients in all four counts and to any person who paid any part of respondent's fee on behalf of any of those clients; shall participate in the Louisiana State Bar Association's fee arbitration program with respect to all clients referenced in the four counts and any person who paid respondent's fee on behalf of any of those clients; and shall pay any restitution which is determined to be owed as a result of the arbitration procedure no later than the expiration of the term of respondent's recommended new JLAP contract.
3. A practice monitor shall be appointed to monitor the administrative and organizational aspects of respondent's law practice for a period of one year of active practice.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that Bruce C. Ashley, II, Louisiana Bar Roll number 2577, be and he hereby is suspended from the practice of law for a period of eighteen months. This suspension shall be deferred in its entirety, subject to the conditions set forth in this opinion. Any failure of respondent to comply with these conditions, or any misconduct during the probationary period, may be grounds for making the deferred suspension executory, or imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

Buddy Stockwell, the executive director of JLAP, testified that all of respondent's drug tests had been negative, but he had been late in submitting his reports, paying his fees, and performing his daily check-ins. Notwithstanding these "administrative challenges," as Mr. Stockwell called them, he testified that he had no reason to believe that respondent is using substances.

The ODC had urged as an aggravating factor that respondent is indifferent to making restitution; however, the committee specifically rejected this factor, stating, "Respondent expresses genuine remorse, yet he is unclear on when and to the extent he intends to engage in the action of actually making restitution. We find that Respondent is willing to make restitution, but guidance in the form of an unequivocal restitution order would be helpful." [Emphasis in original.]

In 2013, we accepted a petition for consent discipline and suspended respondent from the practice of law for six months, fully deferred, subject to the condition that he attend Ethics School. In re: Ashley , 13-1512 (La. 9/20/13), 126 So.3d 452. In the petition, respondent acknowledged that he had neglected a legal matter and failed to communicate with a client. In 2008, respondent was admonished for maintaining personal funds in his trust account. In 2004, respondent was admonished for failing to communicate with a client. In 1986, respondent received a formal reprimand, but the nature of the misconduct is not included in the record.